UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-14241-MARRA
MAGISTRATE JUDGE REID

ROBERT EARL GORHAM,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

The *pro se* Petitioner, **Robert Earl Gorham**, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence, entered following a jury trial in Okeechobee Circuit Court, Case No. 472004CF000618A.

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D. Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

---

[1] Julie L. Jones is no longer the Secretary of the Department of Corrections.  Mark S. Inch is now the proper respondent in this proceeding.  Inch should, therefore, "automatically" be substituted as a party under Federal Rules of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

For its consideration of the petition [ECF 1], the court has received the state's response to this court's order to show cause, along with its supporting appendices [ECF 23, 24, 25, 26, 27, 28], containing copies of relevant state court records.

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Petitioner raises the following grounds:

**Claim 1**: Ineffective assistance of counsel for failing to convey a five-year plea offer that Petitioner would have accepted [ECF 1, p. 7-27; ECF 23, p. 47-54];

**Claim 2**: Petitioner's life sentence for enhanced first-degree felony burglary was illegal because the jury's verdict did not specify what crime Petitioner committed during the course of the burglary, an assault or a battery [ECF 1, p. 28-30; ECF 23, p. 54-56];

**Claim 3**: The trial court used the incorrect standard of review when denying his post-conviction motion under Fla. R. Crim. P. 3.850 [ECF 1, p. 31-34; ECF 23, p. 56-58];

**Claim 4**: Ineffective assistance of counsel for failing to develop and support a "rental defense" to burglary [ECF 1, p. 35-39; ECF 23, p. 58-60];

**Claim 5**: Ineffective assistance of counsel for failing to object when the state's witness recounted Connie Hill's initial statements [ECF 1, p. 39-45; ECF 23, p. 60];

**Claim 6**: Ineffective assistance of counsel for failing to impeach the state's chief witnesses, Melissa Gorham and Connie Hill [ECF 1, p. 45-56; ECF 23, p. 60-62];

**Claim 7**: Ineffective assistance of counsel for failing to object to a jury instruction [ECF 1, p. 56-59; ECF 23, p. 62-63].

**Claim 8**: Ineffective assistance of counsel for failing to advise him on the lesser included offense of trespass with a battery [ECF 1, p. 59-62; ECF 23, p. 63-67];

**Claim 9**: The trial court convicted the Petitioner pursuant to an unconstitutionally vague burglary statute, Fla. Stat. § 810.02(1) [ECF 1, p. 63-65; ECF 23, p. 67-70];

**Claim 10**: The trial court erred when advising Petitioner regarding the Sixth Amendment assistance clause [ECF 1, p. 65-67; ECF 23, p. 70-73];

**Claim 11**: Petitioner was denied due process at his resentencing hearing when the state introduced prior arrest information and misleading testimony [ECF 1, p. 68-70; ECF 23, p. 73-78]; and

**Claim 12**: Ineffective assistance of counsel for failing to object to the trial court's reliance on Petitioner's prior arrest information and misleading testimony at resentencing [ECF 1, p. 71-74; ECF 23, p. 73-78].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that Petitioner's motion be denied because Petitioner is not entitled to relief on the merits.

## II.  Factual and Procedural History

### Pre-Trial Proceedings

On October 1, 2004, the state charged Petitioner by information with battery of Melissa Gorham (Count 1); battery of Constance Hill (Count 2); aggravated assault of Constance Hill (Count 3); and attempted aggravated battery of Constance Hill (Count 4). [ECF 24, Ex. 2].

In October of 2004, Petitioner submitted a flurry of *pro se* filings to the trial court, including a demand for a speedy trial. [ECF 24, Ex. 4, 5, 6, 7, 8]. The trial court struck all of Petitioner's *pro se* motions. [ECF 24, Ex. 10, 11, 12, 13, 14].

Petitioner hired and discharged three attorneys before trial. First, on November 22, 2004, Petitioner filed a motion to discharge his Public Defender, Mary Celedonio. [ECF 24, Ex. 15]. Several days later, he filed a "notice of non-waiver to fast and speedy trial" and a "notice of intent" to file a petition for writ of mandamus to compel Celedonio to withdraw. [ECF 24, Ex. 19, 20].

In a December 10, 2004 hearing on Petitioner's motion to discharge, he stated that he and his attorney had reached an impasse regarding discovery and trial strategies. [ECF 24, Ex. 24, p. 2]. Celedonio agreed to withdraw. [*Id.* p. 9-10].

Next, the trial court appointed Public Defender Rebecca Boldt Hamilton to represent Petitioner.[2] [*Id.* p. 10-12]. Also at this hearing, the trial court explained the Sixth Amendment assistance clause to Petitioner. [Id. p. 7-8]

At a February 24, 2005 pre-trial calendar call, Ms. Hamilton informed the court that she had received a plea offer from the state that she needed to discuss with Petitioner, who was not present at the hearing. [ECF 24, Ex. 29, p. 3].

On March 17, 2005, Petitioner filed a *pro se* motion to dismiss counsel or, in the alternative, inquire into whether counsel filed for a trial date. [ECF 24, Ex. 30]. On March 30, 2005, Petitioner filed a *pro se* motion for leave to proceed *pro se* and demanded a speedy trial. [ECF 24, Ex. 31].

---

2 Two months after Ms. Hamilton filed her notice of appearance, Petitioner filed a *pro se* motion to dismiss counsel on February 4, 2005. [ECF 24, Ex. 26]. Petitioner requested that the court appoint Jerald Bryant to represent him. [*Id.*]. At February 17, 2005 hearing on Petitioner's motion, he withdrew his request to discharge Ms. Hamilton. [ECF 24, Ex. 29, p. 3].

On March 31, 2005, the trial court conducted a pre-trial hearing at which Petitioner was present and represented by Ms. Hamilton. [ECF 24, Ex. 29]. Ms. Hamilton informed the court that the state had made a ten-year plea offer which required Petitioner to accept immediately or the state would file an amended information charging him under counts 1 and 2 with burglary of a conveyance with battery, rather than simply battery. [*Id.* p. 4-5]. The new crimes would constitute life felonies, not misdemeanors. [*Id.* p. 5]. Petitioner confirmed that Ms. Hamilton had explained the consequences of rejecting the offer. [*Id.*]. The court conducted the following colloquy:

> THE COURT: Okay. So the fourth question is, Do you want to go to trial on the new added charges of burglary of an occupied conveyance with battery, or do you want to enter a plea to the old charges? And your answer is, that you want a trial and you understand that if you reject this plea offer and do not enter a plea today that the State is going to file two additional charges of burglary of an occupied conveyance with a battery and each of those has a possible life sentence. Do you understand that sir?
>
> PETITIONER: Yes sir I do.
>
> THE COURT: And again, you are rejecting the plea offer with the understanding that the State is going to file those charges and you will be going to trial facing two charges that carry life, life in prison penalties? Is that correct sir?
>
> PETITIONER: Yes sir.

[*Id.* p. 5-6]. Petitioner withdrew his *pro se* motion to discharge Ms. Hamilton and the court struck his speedy trial motion. [*Id.* p. 6-7].

On April 6, 2005, the state filed an **amended information** charging Petitioner with burglary of a conveyance belonging to Connie Hill with an assault or battery on Connie Hill (Count I); burglary of a conveyance belonging to Melissa Gorham with an assault or battery on Melissa Gorham (Count II); aggravated assault of Constance Hill (Count III); and attempted aggravated battery of Constance Hill (Count IV). [ECF 24, Ex. 32].

After Petitioner again moved *pro se* to discharge Ms. Hamilton and for speedy trial, the trial court conducted an April 13, 2005 hearing. [ECF 24, Ex. 29]. The court reviewed with Petitioner the pitfalls of proceeding *pro se* and the fact that the court was not required to appoint a new lawyer. [*Id.* p. 8-9]. Petitioner complained that Ms. Hamilton had not provided him with deposition transcripts. [*Id.* p. 10-11]. The court concluded that Petitioner failed to establish that Ms. Hamilton was incompetent or ineffective. [*Id.* p. 18]. Petitioner withdrew his motion and Ms. Hamilton agreed to continue representing him. [*Id.* p. 23-24]. The court struck Petitioner's speedy trial motion. [*Id*. p. 24]. The state agreed to re-submit the prior 10-year plea offer to Petitioner to give him another chance to accept after reading the deposition transcripts. [*Id*. p. 13-15, 28]. The state indicated that the plea offer would expire the Friday before jury selection. [*Id*. p. 25].

Ms. Hamilton deposed Connie Hill, Melissa Gorham, Deputy Richard Durfee, Deputy Timothy Higgin, Roger Gorham, and Christina Gorham. [ECF 24, Ex. 27,

28]. The court granted Ms. Hamilton's motions to transcribe the depositions. [ECF 24, Ex. 27, 33, 34, 35, 36, 37, ,38, 39, 40].

Nevertheless, on June 30, 2005, Petitioner filed a *pro se* motion to dismiss Ms. Hamilton and appoint "conflict-free" counsel, specifically, Jeffery Battista, Esq. [ECF 24, Ex. 41]. Ms. Hamilton consented to withdraw. [ECF 24, Ex. 42]. On August 2, 2005, the trial court entered its order allowing Ms. Hamilton to withdraw and appointing Jeffrey Battista. [ECF 24, Ex. 43].

On August 22, 2005, Mr. Battista filed his notice of appearance along with a written plea of not guilty and demand for jury trial.[3] [ECF 24, Ex. 44, 45]. Several months later, on October 12, 2005, Petitioner filed with the court a bar complaint that he had submitted against Mr. Battista along with an order dismissing a civil suit he had filed against Mr. Battista. [ECF 24, Ex. 48]. As a result, Mr. Battista filed a motion to withdraw as counsel. [ECF 24, Ex. 49].

At the hearing on the motions, the trial court granted the motion to withdraw and appointed Edmund Alonzo, Esq. to represent Petitioner. [ECF 24, Ex. 29, p. 39-48]. On October 31, 2005, Alonzo filed his notice of appearance. [ECF 24, Ex. 51]. Beginning on November 8, 2005, Petitioner filed several *pro se* motions in an attempt to discharge Mr. Alonzo due to an alleged conflict of interest. [ECF 24, Ex.

---

3 Four days later Petitioner filed a *pro se* motion to dismiss Mr. Battista and leave to proceed *pro se*. [ECF 24, Ex. 46]. However, on September 19, 2005, Petitioner filed a *pro se* motion to withdraw these motions [ECF 24, Ex. 47].

7

52, 54, 55]. He requested that Ms. Hamilton be re-appointed and also sought an attorney to represent him in connection with his motion to discharge. [*Id.*].

**Trial Proceedings**

The trial began on November 29, 2005. Mr. Alonzo represented Petitioner throughout the trial. The state called as witnesses Detective Richard Durfee, Melissa Gorham ("Melissa"), and Connie Hill ("Connie"), presenting the following evidence. [ECF 24, Ex. 25, Trial Transcripts ("T.")].

In 2004, Melissa and Petitioner had been married for 8.5 years and had two children, ages 4 and 8. [T. 303]. In early September of 2004, Connie Hill moved in with the couple to help take care of the children. [T. 304]. Connie owned a Jeep and agreed to let Petitioner and Melissa use her car as needed. [T. 357-58, 322, 391].

On September 16, 2004, Petitioner and Connie had an altercation after Connie rejected Petitioner's sexual advances. [T. 385]. In an attempt to reconcile, Petitioner took Melissa and Connie out to dinner on September 17, 2004. [T. 334-35]. Petitioner drove the three of them in the Jeep to the restaurant, but Melissa agreed to be the designated driver. [T. 307, 317, 358]. After dinner, Petitioner drove them to a night club. [T. 321]. He refused Connie's request to let Melissa drive. [*Id.*].

At the club, Melissa went to get a round of drinks while Petitioner and Connie waited at a table, finishing an earlier round. [T. 307-08]. While she was gone, Petitioner became very possessive, telling people that Melissa and Connie were "his

wives." [T. 359]. When Melissa returned, Petitioner was angry because a man spoke to Connie. [T. 308, 359]. Petitioner screamed at Connie, calling her "bitch . . . whore . . . slut" and demanding that she move out of his house. [T. 308].

Petitioner told Melissa that they were leaving. [*Id*.]. Connie asked Petitioner for the car keys to no avail. [T. 309, 360]. Melissa tried unsuccessfully to get the car keys from Petitioner. [T. 308].

When they left the club, Petitioner drove the Jeep, Melissa was in the front passenger seat, and Connie was in the back. [T. 309, 360]. Petitioner proceeded to pull Connie's hair, punch her in the face, and choke her, while screaming at her. [T. 309-10, 387]. Melissa and Connie were screaming at him to stop. [T. 310]. Melissa said she would divorce Petitioner. [T. 311]. He became furious, and started to physically attack Melissa. [*Id*.].

Petitioner then said, "that's it, I'm killing both of you bitches tonight." [*Id*.]. He drove at high speeds down various dirt roads, while he continued to attack Connie. [T. 312]. Melissa attempted to grab the keys from the ignition, without success. [*Id*.]. At one point, Melissa tried to force the Jeep into oncoming traffic in order to create a collision so that she could escape. [T. 312-13]. Petitioner grabbed Melissa by the hair, shook her, and punched her in the face. [T. 313, 364]. Melissa believed she was going to die. [T. 313].

Petitioner pulled over to the side of the road and said "I'll kill you bitches

right here." [T. 314]. Petitioner lunged toward Connie, who managed to jump out of the Jeep and start running. [T. 314, 364, 378]. Melissa held Petitioner down, in a head lock, to give Connie time to escape. [T. 314]. Petitioner freed himself from Melissa's grip and got out of the Jeep. [T. 315]. Petitioner screamed into the darkness at Connie, "when I find you bitch I'm going to beat you to death." [*Id.*].

Melissa took this opportunity to exit the car and run for help. [T. 315-16]. She looked back and observed Petitioner back behind the wheel, driving crazily. [T. 316]. Melissa believed he was trying to run Connie over. [*Id.*]. Melissa ran to house and called 911. [T. 316].

As a result of Melissa's 911 call, Detective Durfee was dispatched to investigate. [T. 281]. He found Connie walking down the street. Blood was dripping from her mouth and she had grass in her hair. [T. 281-82]. Connie was crying, upset, and hesitant to approach him. [T. 282]. He asked her what was going on and she responded that her friend's husband was trying to kill her. [T. 284]. She got into his patrol car so they could find Melissa. [T. 289]. Connie explained that her attacker had yelled at her, called her names, and punched her. [T. 290]. When his wife grabbed him, Connie was able to escape the Jeep and run into a field. [T. 290-91].

Melissa then ran up to the police detective's car. [T. 291]. She was crying and the left side of her face was swollen, as though she had been punched several times. [T. 292]. Melissa told him that when her husband drove them home from the bar he

started calling Connie names and hitting her and threated to kill them. [T. 293-94].

Melissa managed to restrain him long enough for Connie to exit the vehicle and run

away. [*Id*.].

Detective Durfee took photographs of Melissa's injuries within two hours of

meeting her. [T. 295-96]. The state introduced the photographs without objection.

[T. 296]. After taking Melissa's statement, he placed her in the back of his car with

Connie. [T. 300].

### Verdict/Sentencing

The jury found Petitioner guilty as charged on all counts. [ECF 24, Ex. 56].

On January 4, 2006, Petitioner filed a *pro se* motion for arrest from judgment and

request for new trial. [ECF 24, Ex. 57 & 58]. On January 10, 2006, Petitioner filed

a *pro se* motion for postconviction relief, for writ of mandamus, for writ of habeas

corpus, or for writ of coram nobis. [ECF 24, Ex. 59]. Petitioner alleged that his

former counsel failed to convey a plea offer, which he would have accepted. [*Id*.].

On January 31, 2006, Petitioner filed notice of filing "un-conveyed plea offer of

10/18/04." [ECF 24, Ex. 60].

At the outset of the February 13, 2006 sentencing hearing, the trial court

considered Petitioner's pending *pro se* motions. [T. 506]. The court addressed the

issue of newly discovered evidence of a plea offer in the context of a motion for new

trial, ultimately denying the motion. [T. 512]. The trial court adjudicated Petitioner

guilty and sentenced him as a prison releasee reoffender ("PRR"), to life under Counts 1 and 2 and to concurrent five-year terms under Counts 3 and 4. [ECF 24, Ex. 63].

**Direct Appeal**

Petitioner appealed to the Fourth District Court of Appeal ("Fourth DCA"). [ECF 24, Ex. 65]. He argued, among other issues, that his first attorney, Mary Celedonio, provided ineffective assistance when failing to convey an acceptable plea offer to Petitioner. [*Id.* p. 39-44]. The Fourth DCA reversed one of Petitioner's convictions for burglary of a conveyance with an assault or battery and remanded for a recalculation of Petitioner's scoresheet. *Gorham v. State*, 968 So. 2d 717 (Fla. 4th DCA 2007). The court rejected Petitioner's ineffective assistance of counsel claim. *Id*. at 719. Mandate issued February 1, 2008. [ECF 24, Ex. 70].

The trial court subsequently vacated Petitioner's conviction as to Count 2. [ECF 24, Ex. 71]. Petitioner sought discretionary review of the Fourth DCA's opinion in the Florida Supreme Court, which declined to review in *Gorham v. State*, 983 So. 2d 1154 (Fla. 2008) (table). [ECF 24, Ex. 72, 75].

**Petition for Writ of Habeas Corpus**

On December 21, 2007, Petitioner filed a petition for writ of habeas corpus in the Fourth DCA, alleging appellate counsel was ineffective for failing to argue that the trial court had invaded the province of the jury and failing to file a notice of

supplemental authorities. [ECF 24, Ex. 76]. The Fourth DCA denied the motion as well as Petitioner's motion for rehearing. [ECF 24, Ex. 78, 150].

### First Motion to Correct Illegal Sentence

On February 6, 2008, Petitioner filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a), arguing that his PRR life sentence for burglary of a conveyance with an assault or battery was illegal. [ECF 24, Ex. 79]. After the state responded, the trial court denied Petitioner's motion. [ECF 24, Ex. 80, 81, 82].

Petitioner appealed. [ECF 24, Ex. 83]. The Fourth DCA reversed the trial court's order and remanded for a *de novo* resentencing hearing in *Gorham v. State*, 988 So. 2d 152 (Fla. 4th DCA 2008). [ECF 24, Ex. 87]. The Fourth DCA concluded that the trial court erred in sentencing Petitioner as a PRR in connection with burglary of a conveyance, which was not a crime covered by the PRR statute, Fla. Stat. § 775.082(9). *Id.* at 153. Mandate issued on August 22, 2008. [ECF 24, Ex. 88].

### Second Motion to Correct Illegal Sentence

On August 1, 2008, while Petitioner's appeal of his prior Rule 3.800(a) motion was pending, Petitioner filed a second Rule 3.800(a) motion in the trial court. [ECF 24, Ex. 90]. Petitioner argued that his life sentence for the enhanced first-degree felony burglary was illegal because the jury's verdict did not specify whether he had committed an assault or a battery during the course of the burglary. [ECF 24, Ex. 90). He raises this argument under claim 2 in the instant proceedings. [ECF 1, p. 28-

30; ECF 23, p. 54-56].

The trial court dismissed the motion without prejudice to give the Petitioner the opportunity to properly raise the argument in a Rule 3.850 motion. [ECF 24, Ex. 91]. Petitioner appealed. [ECF 24, Ex. 92]. The Fourth DCA affirmed in *Gorham v. State*, 993 So. 2d 128 (Fla. 4th DCA 2008). The Florida Supreme Court rejected Petitioner's request for discretionary review in *Gorham v. State*, 7 So. 3d 535 (Fla. 2009) (table).

### Resentencing Hearing

On June 22, 2010, the trial court conducted a resentencing hearing. [ECF 26]. The court sentenced Petitioner to life as to count 1 and did not impose a sentence as to the three remaining counts. [ECF 24, Ex. 101, 102]. Petitioner no longer qualified as a PRR. [*Id.*].

### First Rule 3.850 Motion for Post-conviction Relief

On December 1, 2009, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. [ECF 24, Ex. 100]. After the trial court resentenced him, Petitioner filed numerous supplements to this motion. [ECF 24, Ex. 103, 104, 105]. Petitioner argued his counsel was ineffective for failing to develop and support the "rental defense" to burglary (Claim 1A); failing to object to Detective Durfee's testimony describing Connie Hill's initial statements (Claim 1B); failing to impeach the state's chief witnesses, Melissa Gorham and Connie Hill

(Claim 1F); failing to object to a jury instruction which constructively amended the charging document (Claim 1J); and failing to advise him on the lesser included offense of trespass with a battery (Claim 1K). He also argued that the burglary statute, Fla. Stat. § 810.02(1), was unconstitutionally vague (Claim 2) and that trial court erred when advising Petitioner regarding the Sixth Amendment assistance clause (Claim 7). Petitioner raises these same grounds in the instant proceedings under claims 4 through 10.

After conducting an evidentiary hearing on Petitioner's Rule 3.850 motion [ECF 27], the trial court issued a lengthy order denying all of Petitioner's claims. [ECF 24, Ex. 106].

Petitioner appealed, arguing that the trial court applied the incorrect standard. [ECF 24, Ex. 107]. Petitioner raises this argument under claim 3 in the instant proceedings. The Fourth DCA affirmed in *Gorham v. State*, 126 So. 3d 1066 (Fla. 4th DCA 2013) (table). Mandate issued January 24, 2014. [ECF 24, Ex. 112].

**Second Rule 3.850 Postconviction Motion**

On May 7, 2012, Petitioner filed a Rule 3.850 motion and amended motion for postconviction relief from the *de novo* resentencing. [ECF 24, Ex. 113, 119]. Petitioner argued that he was denied due process at his resentencing hearing when the state introduced prior arrest information and misleading testimony (Claim 1). He also argued that his counsel was ineffective in failing to raise this due process

15

argument at the resentencing hearing (Claim 2A). [ECF 24, Ex. 119]. Petitioner raises these two arguments under Claims 11 and 12 in the instant proceedings. The state filed a response and supplemental response. [ECF 24, Ex. 121, 123]. After conducting an evidentiary hearing [ECF 28], the trial court issued an order denying the motion [ECF 24, Ex. 128].

Petitioner appealed. [ECF 24, Ex. 131]. The Fourth DCA affirmed in *Gorham v. State*, 224 So. 3d 234 (Fla. 4th DCA 2013) (table). [ECF 24, Ex. 135]. Mandate issued April 28, 2017. [ECF 24, Ex. 136].

**Petition for Writ of Habeas Corpus in State Trial Court**

On January 29, 2014, Petitioner filed a petition for writ of habeas corpus in the trial court challenging the adequacy of the Information with respect to the burglary statute and the burglary instructions. [ECF 24, Ex. 137]. The trial court dismissed the petition, noting that the court previously found that the information was not fatally defective and that Petitioner had ample opportunity to raise this issue earlier. [ECF 24, Ex. 138]. On appeal, the Fourth DCA affirmed in *Gorham v. State*, 142 So. 3d 905 (Fla. 4th DCA 2014). Mandate issued on August 1, 2014. [ECF 24, Ex. 142].

**Third Rule 3.800(a) Motion**

On March 17, 2015, Petitioner filed a *pro se* Rule 3.800(a) motion. [ECF 24, Ex. 143]. The trial court denied the motion. [ECF 24, Ex. 144 and 146]. Petitioner

did not appeal.

### 28 U.S.C. § 2254 Petition

Petitioner next came to this court filing the instant petition pursuant to 28 U.S.C. § 2254. [ECF 1]. The state filed a response to this court's order to show cause, with supporting exhibits. [ECF 23, 24, 25, 26, 27, 28]. The state does not argue that the petition is untimely, but argues that Petitioner did not properly exhaust claims 9 and 11 because Petitioner did not raise these arguments on appeal from the trial court's order denying him relief as to these two claims. [ECF 23, p. 33-38]. The state addressed the merits of all Petitioner's claims. [*Id.* p. 47-79].

### III.  Threshold Issues

### Exhaustion

The Respondent argues that **claims 9 and 11** are unexhausted and procedurally defaulted from federal habeas review. [ECF 23, p. 33-38].

When reviewing a federal habeas petition filed by a state prisoner, federal courts may "skip over the procedural bar issues" to deny on the merits. *See, e.g.*, *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which governs a state prisoner's federal petition for habeas corpus, provides this court with authority to do so. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding

the failure of the applicant to exhaust [state remedies.]"). Furthermore, even before AEDPA's enactment, judicial economy sometimes warranted reaching the merits when they were "easily resolvable against the habeas petitioner." *See, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

Accordingly, this court need not resolve whether any procedural bars exist, because Petitioner clearly cannot prevail on the merits of claims 9 and 11. *See Valle v. Sec'y, Fla. Dep't of Corr.*, 459 F.3d 1206, 1213 (11th Cir. 2006).

### IV. Governing Legal Principles

"The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required

to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits," in the state forum, § 2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved an unreasonable application of, clearly established Federal law,[4] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and

---

[4]"Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *White v. Woodall*, 572 U.S. 415, 419 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102.

## V. Discussion

### Claim 1

In claim 1, Petitioner alleges his counsel was ineffective for failing to convey a five-year plea offer that he would have accepted. [ECF 1, p. 7-27; ECF 23, p. 47-54].

Petitioner first raised this claim in a motion for new trial based on newly discovered evidence. [T. 512]. Specifically, Petitioner argued that the state made a five-year plea offer to his attorney, Public Defender Mary Celedonio, on October 18, 2004. [T. 512]. While the state trial court noted that the claim was more appropriately brought in a Rule 3.850 motion, however, the court heard evidence in order to clarify the record for a future Rule 3.850 proceeding. [T. 517]. Ultimately, Petitioner did not raise this as an ineffective assistance of counsel claim pursuant to Rule 3.850.

Mary Celedonio testified to the following facts. [T. 518]. She received the five-year offer on October 18, 2004 via email and placed a copy of the e-mail in her file. [T. 519]. She went to the jail to meet with Petitioner on October 19, 2004. [*Id.*]. Her normal course would be to inform the client of the state's offer, however,

Petitioner immediately tried to fire her at the October 19th meeting. [T. 519-20]. She simply could not recall whether she extended the offer to Petitioner. [T. 520]. She did remember that Petitioner made clear that he was not going to waive his speedy trial rights and wanted to proceed to trial as soon as possible. [T. 520]. He did indicate a willingness to plea to misdemeanor batteries and do some type of probation or rehabilitation. [T. 520-21]. Ms. Celedonio believed that it would have been very difficult to convince Petitioner to accept a five-year plea deal. [T. 535].

Petitioner's next attorney, Rebecca Boldt Hamilton, testified as well. She did not remember receiving a five-year plea offer from the state. [T. 527]. While representing Petitioner, he repeatedly made demands for speedy trial and never wavered from the idea of proceeding to a jury trial. [T. 527-28].

Petitioner testified to the following in the state trial court. [T. 529]. Ms. Celedonio did not convey the state's five-year plea offer. Had he been offered five years, he would have accepted. [T. 529]. He recalled that he had previously stated that he was guilty of battery and would plead to same, but no more. [T. 530]. Petitioner conceded that he had filed at least fifteen documents during the prior two years demanding a speedy trial. [T. 532]. In his bar complaint against Mr. Battista, he stated: "this is not a plea deal case, this is a trial case." [*Id*.]. Petitioner acknowledged that at the end of the trial he stated that he believed he was only guilty of two battery offenses. [T. 536].

After hearing the evidence, the trial court made several findings of fact. First, the court found that the record did not clearly indicate that Petitioner was made aware of the five-year plea offer. [T. 541]. The court found, however, regardless of whether Petitioner knew about the offer, Petitioner would not have accepted it. [*Id.*]. In support of the latter conclusion, the court pointed to Petitioner's countless demands for a speedy trial beginning "from the first days in the county jail;" Petitioner's dismissal of multiple attorneys specifically because "they weren't moving fast enough" towards trial; Petitioner's rejection of the state's ten-year plea offer, notwithstanding the fact that Petitioner was facing life in prison; and Petitioner's belief that he was only guilty of battery. [T. 541-43]. In light of the foregoing, the trial court denied Petitioner's motion for new trial. [T. 541].

On direct appeal, Petitioner alleged that the record established that his counsel was ineffective in failing to convey the state's October 18, 2004 five-year plea offer. [ECF 24, Ex. 65, p. 39]. Petitioner argued that the trial court's denial of his motion for new trial was contrary to the evidence in the record of counsel's ineffective assistance. [*Id.*]. In a written opinion, the Fourth DCA rejected Petitioner's argument as follows:

> As to Gorham's argument that he was denied effective assistance of counsel guaranteed by the Sixth Amendment because his counsel did not inform him that the State had offered a five-year plea offer, we affirm as **the record of the hearing held by the trial court on this issue supports the trial court's finding that Gorham would not have taken the five-year offer had it been conveyed**. *Cottle v. State*, 733

> So. 2d 963, 966 (Fla. 1999) (holding that a claim of ineffective assistance of counsel based on allegations that counsel failed to properly advise the defendant about plea offers by the State must allege the following to make a prima facie case: (1) counsel failed to relay plea offer, (2) defendant would have accepted it, and (3) the plea offer would have resulted in a lesser sentence).

*Gorham v. State*, 968 So. 2d 717, 719 (Fla. 4th DCA 2007) (emphasis added).

This court should defer to the state trial court's conclusion that Petitioner would not have accepted a five-year plea offer because he had consistently stated that he wanted to proceed to trial. "Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1249 (11th Cir. 2013) (quoting *Jones v. Walker*, 540 F.3d 1277, 1288 n. 5 (11th Cir.2008)). *See also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). There is no clear and convincing evidence in the record which rebuts the state trial court's conclusion.

Nothing in the record supports the conclusion that the trial court erred in declining to grant a motion for new trial. Therefore, the rejection of the claim by the Fourth DCA on direct appeal is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 2**

In claim 2, Petitioner alleges his life sentence for enhanced first-degree felony

burglary is illegal because the jury verdict did not specify what crime Petitioner committed during the course of the burglary, an assault or a battery. [ECF 1, p. 28-30; ECF 23, p. 54-56]. Petitioner's claim is meritless because under Florida law, the verdict need not specify either offense.

The United States Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In its later opinion in *Blakely v. Washington*, 542 U .S. 296, 303-04 (2005), the Supreme Court explained that under *Apprendi* "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

Petitioner raised this claim in his Rule 3.800(a) motion. [ECF 24, Ex. 90]. While, the Fourth DCA next noted that a Rule 3.800(a) motion "is a proper vehicle to raise certain *Apprendi* challenges that can be determined from the face of the record," it concluded that the Petitioner's claims were meritless and any error on the part of the trial court was harmless. *Id.* at 130 (citing *Hughes v. State,* 826 So. 2d 1070, 1072 (Fla. 1st DCA 2002)).

The court asserted:

Under section 810.02(2)(a), a defendant commits a first-degree felony punishable by life if, during the course of committing a burglary, he or

she "[M]akes an assault or battery upon any person." The jury in this case found that Gorham made "an assault or battery" during the course of the burglary. A more specific finding as to which was committed, i.e., an assault or a battery, was not required to support the first-degree felony form of burglary. The jury's finding that Gorham committed one or the other was sufficient to support the enhanced penalty.

Gorham's argument that the jury's verdict may not have been unanimous is without merit. Even if some jurors believed Gorham committed a battery, while others found he committed merely an assault, during the burglary, both of these findings support the enhanced penalty, and the verdict was unanimous as to the facts needed to support the first-degree felony form of burglary. The State did not have to prove beyond a reasonable doubt which particular one was committed during the burglary. § 810.02(2)(a), Fla. Stat.

*Id.*

The Fourth DCA next summarized the evidence at trial as follows:

Gorham repeatedly punched the owner of the vehicle in the face and tried to choke her. Gorham also repeatedly punched his wife in the face and threatened to kill both occupants of the vehicle during the incident. After the owner of the vehicle managed to escape, Gorham tried to run her down with her own vehicle while continuing to struggle with his wife who remained in the vehicle. Both victims had bleeding facial wounds immediately after the incident.

*Id.* The appellate court held that this evidence supported "the conclusion that Gorham committed multiple assaults and batteries during the offense, and a jury finding that a single assault or battery was committed during the offense suffices." *Id.* As a result, to the extent the jury erred in failing to enter "a 'more specific' verdict, as to whether Gorham committed an assault or battery, or both (as the evidence overwhelmingly supported), would be harmless beyond a reasonable

doubt." *Id.* (citing *Galindez v. State,* 955 So. 2d 517 (Fla. 2007)).

As the Fourth DCA noted, the jury was only required to find whether Petitioner committed "assault **or** battery" under to Fla. Stat. § 810.02(2)(a). The jury did so in Petitioner's case. Nothing in the record supports the conclusion that the Fourth DCA erred in affirming the trial court's denial of this claim. Therefore, the rejection of the claim by the Fourth DCA on direct appeal is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

### Claim 3

In claim 3, Petitioner alleges the trial court used the incorrect standard of review when denying his first Rule 3.850 motion. [ECF 1, p. 31-34; ECF 23, p. 56-58]. Petitioner takes issue with the following excerpt of the state trial court's order denying his Rule 3.850 motion following an evidentiary hearing:

> To be sure, the movant has the burden of proof to establish his entitlement to relief by ***clear and convincing evidence.*** *State v. Gomez*, 363 So. 2d 624 (Fla. 3rd DCA 1978). The "clear and convincing" burden is also referenced in *Abella v. State*, 429 So. 2d 774, 777 (Fla. 3rd DCA 1983):
>
>> The defendant has failed to prove by ***clear and convincing*** evidence that Jaffe's conduct fell below the constitutionally required minimum level of competency. Considered not from hindsight, but based on the circumstances at the time, Jaffe did render reasonably effective assistance of counsel. *See Meeks v. State*, 382 So. 2d 673, 675 (Fla. 1980).

[ECF 24, Ex. 106, p. 3] (emphasis in original).

The state does not expressly address the trial court's use of the "clear and convincing" language in its response. *See* [ECF 23, p. 56-58]. However, the state correctly notes that immediately after the above excerpt, the state trial court stated:

> Here, the defendant has utterly failed to establish either prong of *Strickland*, even by a mere **preponderance of the evidence**. His motion is totally devoid of merit.

[ECF 24, Ex. 106, p. 3] (emphasis added).

In its lengthy order, the state trial court does not refer to the clear and convincing standard again. When addressing individual issues, the trial court repeatedly applies *Strickland*, finding that Petitioner failed to satisfy either prong. Specifically, the court found "insufficient evidence" [*Id.* p. 6], "defendant's own testimony negates this issue," [*Id.* p. 9], "there is no competent credible evidence" [*Id.*], "neither prong of *Strickland* was established" [*Id.* p. 10], "no exculpatory evidence was offered" [*Id.* p. 11], "neither prong of *Strickland* was established [*Id.* p. 11, 12, 13, 14, 19, 22], "no evidence or testimony" [*Id.* p. 17, 19, 20], "there was no evidence" [*Id.* p. 18, 21].

Although the trial court referred to the clear and convincing standard on one occasion in its order, it did not actually apply this standard. Therefore, the rejection of the claim by the Fourth DCA on direct appeal is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed

here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 4**

In claim 4, Petitioner alleges counsel was ineffective assistance for failing to develop and support the "rental defense" to the burglary of a conveyance charge. [ECF 1, p. 35-39; ECF 23, p. 58-60]. Petitioner claimed that he was not guilty of burglary because he had rented the vehicle from Connie. [*Id.*]. Petitioner argues that counsel should have elicited testimony at trial from his friend Steve Bigelow, his brother Roger Gorham, and Roger's wife, Christina Gorham. [*Id.*].

Federal habeas corpus petitioners asserting claims of ineffective assistance, based on counsel's failure to call a witness (either a lay witness or an expert witness), must satisfy the prejudice prong of *Strickland* by naming the witness, demonstrating the witness was available to testify and would have done so, setting out the content of the witness' proposed testimony, and showing the testimony would have been favorable to a particular defense. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). *See also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding federal habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*).

Moreover, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second

guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Of course, a petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

None of these witnesses testified at the Rule 3.850 hearing. [ECF 27]. Petitioner provided the following testimony at the hearing. He admitted that he did not ask defense counsel to list Mr. Bigelow as a trial witness. [*Id.* p. 18]. He further testified that he did not plan to rely on Mr. Bigelow to support his rental defense at trial. [*Id.*]. With respect to Roger and Christina Gorham, Petitioner informed his defense counsel that they knew he paid the victim $300 to rent her Jeep. [*Id.* p. 20]. As a result, defense counsel deposed each of them. [*Id.* p. 21].

Defense counsel testified that the Rule 3.850 hearing that he developed the rental defense by cross examining Melissa Gorham regarding Petitioner's alleged rental agreement with victim Connie Hill. [*Id.* p. 164]. Defense counsel further testified that there was "no hard evidence . . . no written lease" in support of Petitioner's rental defense. [*Id.*].

Ownership for the purposes of charging burglary is not the same as ownership in property law. *Pierre v. State*, 77 So. 3d 699, 701 (Fla. 3d DCA 2011). The fact that the defendant had some legal interest in the property is "not itself determinative of his possessory interest, because the crime of burglary involves 'a disturbance to

habitable security and not to the fee.'" *Id.* (citations omitted). The only proof required is evidence that the victim had a superior legal interest in the property even if the defendant may also have had some claimed right to or interest in the property. *See Russ v. State*, 830 So. 2d 268, 269 (Fla. 1st DCA 2002).

Applying this law to the evidence introduced at the Rule 3.850 hearing, and described above, the state trial court concluded "the evidence established the victim's superior interest in the vehicle." [ECF 24, Ex. 106, p. 6, n.1] (citing *Pierre*, 77 So. 3d 699). Even if defense counsel was deficient for failing to adequately investigate and then call these purported witnesses to testify at trial, Petitioner is not entitled to relief on the claims as he has not demonstrated here that, but for counsel's purported deficiency, the outcome of the trial would have been different, resulting in an acquittal. Therefore, the rejection of the claim by the Fourth DCA on direct appeal is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 5**

In claim 5, Petitioner alleges his counsel was ineffective for failing to object to the officer recounting Connie Hill's initial statements. [ECF 1, p. 39-45; ECF 23, p. 60].

When Detective Durfee began to testify on direct examination to Connie's

statements when he found her walking down the road, defense counsel objected on hearsay grounds. [T. 282]. The state argued that the detective's testimony was admissible in light of the "excited utterance" hearsay exception. [*Id*.]. The court asked the prosecutor to lay a proper foundation showing that Connie's statements constituted an excited utterance. [T. 288]. The prosecutor complied with the court's request. [T. 288-90]. Detective Durfee testified that Connie made her statements about the incident a few minutes after he found her walking along the highway, crying and bloodied. [*Id*.]. Defense counsel renewed the objection. [T. 290]. The trial court overruled the objection. [*Id*.].

Pursuant to Fla. Stat. § 90.802, "hearsay evidence is inadmissible." However, Fla. Stat. § 90.803 provides a list of exceptions to this rule including an "excited utterance," which is "A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fla. Stat. § 90.803(2). First, Petitioner cannot establish deficient performance because counsel did in fact object on hearsay grounds.

The trial court further denied this claim in the Rule 3.850 proceedings because Petitioner had failed to raise the argument on direct appeal. [ECF 24, Ex. 106, p. 7] (citing *Corzo v. State*, 806 So. 2d 642, 644 (Fla. 2d DCA 2002) (a motion pursuant to rule 3.850 may not raise issues that were or could have been raised on direct appeal.)).

In any event, nothing in the record supports the conclusion that the trial court erred in overruling defense counsel's objection. Therefore, the rejection of the claim by the Rule 3.850 trial court, which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 6**

In claim 6, Petitioner alleges his counsel was ineffective for failing to impeach the state's chief witnesses, Melissa Gorham and Connie Hill. [ECF 1, p. 45-56; ECF 23, p. 60-62].

At the Rule 3.850 hearing, Petitioner's defense counsel testified that he made a strategic decision not to attempt to impeach Connie Hill with her history of mental health issues. [ECF 27, p. 170]. Petitioner informed counsel that Connie was "on several medications" and might have had an issue with drinking. [*Id.* p. 168]. Defense counsel also noted that impeaching Connie would not have altered the outcome as Melissa Gorham's testimony corroborated Connie's and was very compelling. [*Id.* p. 170].

Petitioner also takes issue with defense counsel's failure to impeach Melissa with a false report of domestic violence she filed against him six or seven years earlier. Defense counsel testified at the hearing that he feared this type of

impeachment could harm Petitioner by bringing to light a prior domestic abuse incident. [*Id*. 171].

It is well settled that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Patton v. State*, 878 So. 2d 368, 373 (Fla. 2004) (quoting *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000)). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91.

Following the evidentiary hearing, the trial court concluded that defense counsel's testimony supported the conclusion that he "made a reasonable tactical or strategic decision" not to impeach the witnesses as requested by Petitioner. [ECF 24, Ex. 106, p. 10]. The rejection of this claim by the Rule 3.850 trial court, which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 7**

In claim 7, Petitioner alleges counsel was ineffective assistance for failing to object to the jury instruction on the burglary charge. [ECF 1, p. 56-59; ECF 23, p. 62-63]. Petitioner argues that the instruction constituted a constructive amendment

of the information. [*Id*.].

> Robert Earl Gorham did unlawfully enter or remain in a conveyance, the property of Constance Hill, as owner or custodian, with the intent to commit an offense therein, and in the course of committing the burglary did make an assault or battery upon Constance Hill, in violation of Florida Statute § 810.02(2)(a).

[ECF 24, Ex. 32]. The statute under which the state charged Petitioner defined

burglary as

> 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
>
> 2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>
>> a. Surreptitiously, with the intent to commit an offense therein;
>>
>> b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
>>
>> c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02(1)(b). The statute further provides:

> (2) Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender: (a) Makes an assault or battery upon any person.

Fla. Stat. § 810.02(2)(a) (2005).

According to the standard jury instructions applicable at the time of

Petitioner's trial:

To prove the charge of burglary, the state must prove the following two elements beyond a reasonable doubt:

1. (Defendant) had permission or consent to enter a [structure] [conveyance] owned by or in the possession of (person alleged).

2. (Defendant) after entering the [structure] [conveyance] remained therein

*Give a, b, or c as applicable*

a. surreptitiously and with the fully-formed conscious intent to commit the offense of (crime alleged).

b. after permission to remain had been withdrawn and with the fully-formed conscious intent to commit the offense of (crime alleged).

c. with the fully formed-conscious intent to commit or attempt to commit the offense of (forcible felony alleged).

Fla. Str. Jury Instr. 13.1 (2005). *See also In re Standard Jury Instructions in Criminal Cases—Submission 2002-1*, 850 So. 2d 1272, 1280 (Fla. 2003).

The state trial court provided the following instruction to the jury regarding burglary:

For count one, the burglary, to prove the charge of burglary the state must prove the following two elements beyond a reasonable doubt:

that Robert Gorham had permission or consent to enter a conveyance owned by or in the possession of Constance Hill;

that Robert Gorham, upon entering the conveyance remained therein

after permission to remain had been withdrawn and with the fully formed conscious intent to commit the offensive assault or battery on Constance Hill.

(T. 481-82).

Florida courts have determined that the Florida Standard Jury Instructions are presumed to be correct. *See Thomas v. State*, 838 So. 2d 535, 541 (Fla. 2003); *Burns v. State*, 699 So.2d 646, 654 (Fla. 1997). In this case, the trial court faithfully followed the Florida standard jury instruction regarding burglary when instructing the jury. *See* ECF 24, Ex. 32; T. 481-81; Fla. Stat. § 810.02 (2005); Fla. Str. Jury Instr. 13.1 (2005). As a result, defense counsel had no basis on which to lodge an objection to the jury instruction. Petitioner cannot establish that counsel was ineffective in failing to raise a meritless objection. *Palmes v. Wainwright*, 725 F.2d 1511, 1523 (11th Cir. 1984) ("Trial counsel certainly cannot be deemed to have been ineffective for failing to raise [a] tenuous objection.").

The rejection of the claim by the Rule 3.850 trial court, which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 8**

In claim 8, Petitioner alleges counsel was ineffective assistance for failing to advise with him on the lesser included offense of trespass with a battery. [ECF 1, p. 59-62; ECF 23, p. 63-67].

At the Rule 3.850 evidentiary hearing, Petitioner's trial counsel testified that

because there was substantial evidence of battery, the defense theory focused on establishing that it was Movant's Jeep and the incident constituted only misdemeanor domestic violence battery. [ECF 27, p. 174-75]. Counsel further explained that trespass did not fit this theory of defense. [*Id.*]. Trial counsel made a strategic decision to avoid suggesting that Petitioner was wrongfully in the car, i.e., trespassing. [*Id.*]. The state trial court found this testimony credible, concluding that Petitioner did not establish deficient performance or prejudice. [EECF 24, Ex. 106, p. 13-14].

Petitioner alleges that had the jury been instructed on the lesser included offense of trespass with a battery, the outcome of trial would have been different. In a case involving similar facts, the Eleventh Circuit concluded that the record did not establish prejudice under *Strickland* where counsel failed to request a jury instruction on a lesser included offense. The court held:

> [Petitioner's] assertions that he would have been convicted of the lesser included offense, as opposed to the greater offense, are pure speculation—speculation both that the state trial court would have decided to instruct the jury on the lesser included offense and that the jury, if instructed on the lesser included offense, would have convicted on it instead of the higher offense. That speculation is insufficient to undermine our confidence in the outcome of his trial.

*Harris v. Crosby*, 151 F. App'x 736, 738 (11th Cir. 2005). *See also Sanders v. State*, 946 So. 2d 953, 959-960 (Fla. 2006) (rejecting ineffective assistance claim based on trial counsel's failure to request an instruction on lesser-included offenses, stating "a

defendant has no entitlement to an aberrant jury-'the luck of a lawless decisionmaker.'")(*quoting Strickland*, 466 U.S. at 695); *Johnson v. State*, 855 So. 2d 1157, 1160 (Fla. 4th DCA 2003) (finding that counsel's performance was not ineffective pursuant to *Strickland* for failing to request a jury instruction on a lesser included offense, stating that "although it is 'conceivable' that a jury in a given case might decline to follow the law and grant a jury pardon, this does not seem to us a reasonable probability.").

Here, the trial court instructed the jury that it was free to find Petitioner not guilty of any of the offenses if the state had failed to satisfy its burden of proof. The evidence admitted at trial was clearly sufficient to support the jury's verdict that Petitioner had committed the crime of burglary of a conveyance, as charged. There is no reasonable probability that the jury, which found the state proved every element of the offense charged beyond a reasonable doubt, would have, given the opportunity, ignored its own findings of fact and the trial court's instruction on the law and found Petitioner guilty of the lesser included offense of trespass with a battery. It is generally presumed that jurors follow their instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Thus, Petitioner has failed to establish prejudice.

The rejection of the claim by the Rule 3.850 trial court, which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application

of federal constitutional principles and should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 9**

In claim 9, Petitioner alleges that the burglary statute, Fla. Stat. § 810.02(1), is unconstitutionally vague. [ECF 1, p. 63-65; ECF 23, p. 67-70]. Petitioner argues that the statute does not provide "fair warning" of "how permission to remain is withdraw." [ECF, p. 63]. He also argues that the state trial court erroneously relied on *Von Edwards v. State*, 377 So. 2d 684 (Fla. 1979) when denying this argument in the Rule 3.850 proceedings. [*Id.*]. Petitioner argues that *Von Edwards* "does not speak on the 'withdrawn permission clause.'" [*Id.*].

In the order denying this claim, the state trial court cited *Von Edwards* for the proposition that "the constitutionality of the burglary statute, Fla. Stat. § 810.02, has been upheld." [ECF 24, Ex. 106, p. 18] (citing *Von Edwards*, *supra*). The state trial court also discussed *Delgado v. State*, 776 So. 2d 233, 240 (Fla. 2000), *superseded by statute*, Ch. 2001-58, § 1, Laws of Florida, *as recognized in Sparre v. State*, 164 So.3d 1183 (Fla. 2015), in which the Florida Supreme Court held that "the 'remaining in' language [of Fla. Stat. § 810.02(1)] applies only in situations where the remaining in was done surreptitiously." Thus, "[i]n the context of an occupied dwelling, burglary was not intended to cover the situation where an invited guest turns criminal or violent." *Id. Delgado* cited a number of cases in which Florida

courts have ruled that circumstantial evidence can confirm whether permission was withdrawn. *Id*. at 238. (*Raleigh v. State,* 705 So.2d 1324, 1329 (Fla.1997) ( "There is ample circumstantial evidence from which the jury could conclude that [the victim] withdrew whatever consent he may have given for [the defendant] to remain when [the defendant] shot him several times and beat him so viciously that his gun was left bent, broken, and bloody."); *Jimenez v. State,* 703 So.2d 437, 441 (Fla.1997) ("In the instant case, we conclude that the trier of fact could reasonably have found proof of withdrawal of consent beyond a reasonable doubt. There is ample circumstantial evidence from which the jury could conclude that [the victim] withdrew whatever consent she may have given for [the defendant] to remain, when he brutally beat her and stabbed her multiple times...."); *Robertson v. State,* 699 So.2d 1343, 1346-47 (Fla.1997) ("There was ample circumstantial evidence from which the jury could conclude that the victim of this brutal strangulation-suffocation murder withdrew whatever consent she may have given Robertson to be in her apartment.")).

Moreover, the state trial court correctly noted that in 2001 the Florida legislature amended Fla. Stat. § 810.02 to clarified that an invited person who enters a premise need not remain surreptitiously to violate the statute. [ECF 24, Ex. 106, p. 18] (citing *State v. Robinson*, 936 So. 2d 1198, 1199-1200 (Fla. 1st DCA 2006)). A burglary is established when the invitation is rescinded. *Sparre v. State*, 164 So.3d

at 1201-02. The burglary at issue took place in 2004, long after the *Delgado* decision was superseded by the Florida legislature. *See* Ch. 2001-58, § 1, Laws of Florida; *Sparre v. State*, 164 So.3d at 1202.

Aside from petitioner's conclusory argument, he fails to cite to any other case which has found the burglary statute unconstitutionally vague. Here, the evidence confirmed that, assuming Petitioner had earlier had the victims' consent to drive the car, the victims had clearly withdrawn their consent by repeatedly attempting to retrieve the car keys from him.

The rejection of the claim by the Rule 3.850 trial court, which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application of federal constitutional principles and should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claim 10**

In claim 10, Petitioner alleges the trial court erred when advising Petitioner regarding the Sixth Amendment assistance clause. [ECF 1, p. 65-67; ECF 23, p. 70-73]. Petitioner takes issue with any comments made by the trial court at a December 10, 2004 hearing on Petitioner's motion to discharge his attorney. [*Id.*].

The Petitioner and the court had the following exchange regarding the Sixth Amendment assistance clause during the December 10, 2004 hearing:

> **Petitioner**: It was the, it was just the assistance of counsel, the way that the initial discussion started. I asked that she, I filed a motion for . . .

counsel to be appointed.

**The Court**: And that was denied?

**Petitioner**: I – that's – see this I don't know, but I assume because I didn't get a copy of anything, I didn't know.

**The Court**: Well, I think you did that, I think you did that some time ago, and I think I denied it.

**Petitioner**: I – yeah I never got a copy of it  – of anything, so –

**The Court**: Right. Well I tell you the reason I did that is because you're not entitled to be co-counsel with another, with a lawyer.

**Petitioner**: Right.

**The Court**: You either have a lawyer –

**Petitioner**: Or you're pro se.

**The Court**: You either have a lawyer and the lawyer makes the legal decisions in the case, or you represent yourself without a lawyer, and you make all the decisions in the case.

**Petitioner**: Okay.

**The Court**: Okay?

**Petitioner**: All right. So see that's where I'm reaching one of the problems is  – is I have this belief under case called California versus Faretta, that says I'm entitled to the assistance of counsel under the 6th Amendment. And the assistant no matter how professional is still only an assistant.

**The Court**: Okay, assistance does not  – assistance does not mean that you try the case, and you turn to a lawyer and say, "What do I do next?" That's not assistance of counsel.

**Petitioner**: Yes sir.

42

**The Court**: Assistance of Counsel in the Constitution has been interpreted by the Supreme Court, means you have a lawyer representing you.

**Petitioner**: Yes sir, I – I understand that. And if I can prove this assistant that I pled my case and strategies, is that correct?

**The Court**: But she's the one that calls the shots.

**Petitioner**: Okay.

**The Court**: She discusses with you, talks about it, but she's the one that makes the legal decisions in the case.

**Petitioner**: Okay.

**The Court**: Do you understand?

**Petitioner**: Yes, that's on the record, that's fine.

[ECF 24, Ex. 24, p. 7-8].

The Fourth DCA has held that "there is no requirement for counsel to obtain a client's consent for trial strategy decisions" *Demurjian v. State*, 727 So. 2d 324, 327 (Fla.4th DCA 1999). Requiring the defendant's consent "would severely undermine the value of the 'constitutionally protected independence of counsel' and would begin the imposition of a set of rules that was rejected by *Strickland*, 466 U.S. at 689." *Id.*

In *Florida v. Nixon*, 543 U.S. 175, 187 (2004), the Supreme Court held that defense counsel has a "duty to consult" with the defendant regarding "overarching defense strategy." However, defense counsel need not obtain the client's express

consent for each tactical decision. *Id.* The Supreme Court did list several specific situations when the defendant must make the ultimate decision. Specifically, "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

To the extent Petitioner was requesting to act as co-counsel during his trial, the court correctly rejected the request. The Florida Supreme Court has made clear that "criminal defendants have no right under the Sixth Amendment or under the Florida Constitution to engage in 'hybrid representation'-that is, to simultaneously represent themselves and be represented by counsel." *Johnson v. State*, 974 So. 2d 363, 364 (Fla. 2008).

In light of the above case law, the statements made by the trial court at the December 10, 2004 hearing are not at odds with any applicable law regarding defense counsel's role under the Sixth Amendment. The rejection of the claim by the Rule 3.850 trial court, which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application of federal constitutional principles and should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Claims 11 & 12**

In claim 11, Petitioner alleges he was denied due process at his resentencing hearing when the state introduced prior arrest information and misleading testimony. [ECF 1, p. 68-70; ECF 23, p. 73-78]. In claim 12, Petitioner alleges his counsel was

ineffective for failing to object to the state's introduction of prior arrest information and misleading testimony in support of re-imposing a life sentence. [ECF 1, p. 71-74; ECF 23, p. 73-78].

Petitioner argues that the prosecutor at resentencing repeatedly misrepresented his arrest and conviction history. [ECF 1, p. 68]. He also claims that the prosecutor incorrectly argued that the court could consider both burglary convictions, even though the Fourth DCA had vacated one of them in *Gorham v. State*, 968 So. 2d 717, 718 (Fla. 4th DCA 2007). [*Id*.]. Lastly, Petitioner takes issue with the prosecutor's alleged introduction of prior arrests which did not result in convictions. [*Id*. p. 69].

Because this sentencing issue is purely a matter of state law, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120-21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). The Eleventh Circuit has consistently held that federal courts cannot review a state court's alleged failure to adhere to its own sentencing provisions. *Branan*, 861 F.2d at 1508.

The Supreme Court has recognized that it is permissible "for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing a judgment within the range prescribed by statute."

*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Petitioner was convicted of burglary of a conveyance with battery under Fla. Stat. § 810.02(2), which provides in pertinent part: "Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding **life** imprisonment . . . ." (emphasis added). Because the Petitioner's life sentence was not in excess of the statutory maximum, the court could exercise its decision and consider the evidence about which Petitioner complains.

The Fourth DCA has held that a sentencing court may consider a prior arrest which did not result in a conviction "so long as the court recognizes that these arrests are not convictions or findings of guilt, and the defendant is given an opportunity to explain or offer evidence on the issue of his prior arrests" *Jansson v. State,* 399 So. 2d 1061, 1064 (Fla. 4th DCA 1981). *See also McGill v. State*, 148 So. 3d 531 (Fla. 5th DCA 2014); *Dowling v. State*, 829 So. 2d 368, 371 (Fla. 4th DCA 2002). In *Imbert v. State*, 154 So. 3d 1174, 1176-77 (Fla. 4th DCA 2015), the Fourth DCA held that "a sentencing court may consider an uncharged crime" so long as it does not place undue emphasis on same.

Although Petitioner had an opportunity at resentencing to rebut the arrest records, he failed to do so. *See, generally*, [ECF 26]. Furthermore, the court noted it was only giving the arrest charges limited weight, acknowledging that they were only allegations and not convictions. [*Id*. p. 115]. The trial court also noted it was

giving "a lot more weight" to Petitioner's actual prior convictions for robbery with a deadly weapon and second-degree murder. [*Id*. p. 116].

Petitioner's argument in Claim 11 fails because the sentencing court did not abuse its discretion in considering the facts about which Petitioner now complains when imposing a sentence permitted by the applicable statute. Because there is no trial court error, Petitioner's ineffective assistance of counsel argument in Claim 12 also fails. Petitioner cannot establish that counsel was ineffective in failing to raise a meritless objection. *Palmes v. Wainwright*, 725 F.2d 1511, 1523 (11th Cir. 1984).

The state trial court's rejection of claims 11 and 12 in an order following an evidentiary hearing [ECF 24, Ex. 128]., which was affirmed by the Fourth DCA on direct appeal, is not contrary to or an unreasonable application of federal constitutional principles and should not be disturbed here. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000).

## VI. Cautionary Instruction Re *Clisby* Rule

Finally, this court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013) (citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the

extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VII.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## VIII.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison*

*v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, Petitioner may bring this argument to the attention of the district judge in objections.

## IX. Conclusion

Based upon the foregoing, it is recommended that:

1.     the federal habeas petition be DENIED;

2.     a certificate of appealability be DENIED; and,

3.     the case CLOSED.

Objections to this report may be filed with the district court judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall

bar petitioner from a *de novo* determination by the district court judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 27th day of September, 2019.

UNITED STATES MAGISTRATE JUDGE

cc: **Robert Earl Gorham**, *Pro Se*
DC# 924445
Union Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Raiford, FL 32083

**Heidi L. Bettendorf**
Attorney General's Office
1515 N Flagler Drive
Suite 900
West Palm Beach, FL 33401-3432
561-837-5000
Fax: 837-5099
Email: CrimAppWPB@MyFloridaLegal.com