ROBERT EARL GORHAM,

      Petitioner,

v.

MARK S. INCH, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## OPINION AND ORDER

Petitioner Robert Earl Gorham ("Gorham"), presently serving a life sentence at the Union Correctional Institution in Raiford, Florida, seeks issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [DE 1].  Petitioner argues, among other claims, that he was denied his Sixth Amendment right to effective assistance of counsel due to his trial attorney's failure to convey and advise him on the prosecution's five-year pre-trial plea offer.  The matter was referred to the Magistrate Judge for proposed findings and a recommended disposition.  On September 27, 2019, the Magistrate Judge filed a Report and Recommendation recommending that the petition be denied, without an evidentiary hearing and without issuance of a certificate of appealability [DE 49].  On November 27, 2019, the Petitioner filed timely objections to the entirety of the Magistrate Judge's Report [DE 52].

After a careful review of the Report, along with the transcript of the relevant state court hearing and articulated rationale of the state court trial judge who adjudicated the claim, this Court

respectfully disagrees with the conclusions reached by the Magistrate Judge regarding the effectiveness of Gorham's representation as it relates to the alleged unconveyed plea offer. For reasons expressed below, the Court has determined that *de novo* review of this claim is appropriate, pursuant to 28 U.S.C. § 2254(d), and that an evidentiary hearing is required to discharge this function. As to the remaining claims, the Court agrees with the recommended disposition of the Magistrate Judge.

## I.      Factual Background and Procedural History

### A.      State Court Proceedings

On October 1, 2004, Robert Earl Gorham ("Gorham" or "Petitioner") was charged by information with two counts of battery, one count of aggravated assault, and one count of attempted aggravated battery. These charges grew out of Gorham's physical altercation with his wife, Melissa Gorham, and Constance ("Connie") Hill, a family friend who had recently moved into the Gorham home, during a car ride home from a nightclub in Okeechobee, Florida on September 16, 2004. Gorham had taken the women out for dinner that evening, followed by drinks at a nearby nightclub. Gorham became angry over a social interaction between Ms. Hill and one of the other club patrons and insisted on leaving the club with both women. He also insisted on driving over the protest of Connie, the owner of the vehicle in which they traveled.

During the ride home, Gorham began screaming at the women, and, turning to the rear seat, began pulling on Connie's hair, punching her in the face and attempting to choke her. When Melissa attempted to intervene, Gorham began beating her as well. He threatened to kill them both while driving at high speeds on dirt roads. After he pulled off the road, Melissa held Gorham down in a headlock, while Connie started running. When Gorham freed himself and exited the

vehicle, Melissa jumped out and ran into a nearby field. The women alerted the police and Gorham was arrested.

Assistant Public Defender Mary Celidonio was originally assigned to represent Gorham. On October 18, 2004, the prosecutor sent an email to Celidonio offering a five-year plea on the two battery charges (Melissa (Count 1), Connie (Count 2)), and the aggravated assault charge (Connie (Count 3)), with the attempted aggravated battery charge to be dismissed (Connie (Count 4)). This plea offer was conditioned on its acceptance prior to the docket call with no depositions to be taken [DE 4, p. 18]. The following day, Celidonio met with Gorham at the county jail. As she later recalled, Gorham immediately confronted her with complaints and demanded her discharge, derailing the interview. She did not recall relaying the plea offer to Gorman.

During his pretrial detention, Gorham wrote a series of letters (9-26-04; 10-6-04;11-15-04; 11-18-04 ) to his assigned public defender asking to explore a plea deal involving between three to six months of jail time followed by three years of probation and various rehabilitation commitments (AA attendance and anger management counseling).[1] Three of the letters were addressed to Celidonio. Notably, neither of the letters which post-dated the October 19, 2004 jailhouse interview referenced the State's then extant 10-18-04 plea offer [DE 25-1, pp. 522-523].

---

[1] The September 26, 2004 letter (eight days post-arrest) addressed to Public Defender Charlie Barber, captioned "Proposed Plea Agreement," urges "fast and speedy is not to be waived," while offering to plead guilty on the battery charges with a *nolle prosse* on the assault charges, and to serve three months in jail and three years of probation. The October 6, 2004 letter (issued 12 days before the State's 10-18-04 plea offer) is addressed to Celidonio, and is also captioned "proposed plea agreement." In this communication, Gorham offered to plead guilty on the two counts of battery, with the aggravated assault charge being either *nolle prossed* or reduced to "simple assault," and expressed a willingness to accept up to six months of jail time followed by three years of probation with special conditions.

In his third letter of November 15, 2004, again addressed to Celidonio (issued 28 days after the State's 10-18-04 plea offer), Gorham identifies various psychological mitigating factors for consideration relative to his treatment for bi-polar disorder. In his last letter to Celidonio, dated November 18, 2004, also styled as a "proposed plea agreement," Gorham offered to take a plea involving six to twelve months of residential mental health treatment, followed by six months in a halfway house and three years of probation with special conditions [DE 41, pp. 7-8; 11; 15-17; 19-21].

After a hearing held December 10, 2004, Celidonio was discharged from representation and Assistant Public Defender Rebecca Bolt Hamilton was appointed in her stead. Shortly thereafter, at a March 31, 2005 pretrial hearing, Hamilton reported a ten-year plea offer extended by the State on the original information. This offer required Gorham to plead as an "habitual offender," and required immediate acceptance, failing which the information would be amended to add two counts of burglary of a conveyance with an assault or battery - a first-degree life felony. No mention was made of any prior plea offers at that time. Following reiteration of the plea terms and inquiry by the trial judge, Gorham confirmed his rejection of the ten-year plea offer, indicating that he was waiting for promised deposition discovery from Hamilton which he needed to assess the offer [DE 4, p. 52]. The State then volunteered to hold the ten-year offer open for a "reasonable time" to permit the completion and review of such discovery [DE 4, pp. 58-59].

On April 6, 2005, the State amended the information to charge Gorham with burglary of a conveyance with assault or battery on Connie Hill (Count 1); burglary of a conveyance with assault or battery on Melissa Gorham (Count 2); aggravated assault on Connie Hill (Count 3) and attempted aggravated battery on Connie Hill (Count 4).

In August, 2005, less than a week before the scheduled trial date, Attorney Hamilton moved to withdraw on the basis of a conflict of interest between Gorham and another client. The trial judge then appointed Attorney Jeffery Battista to represent Gorham. In October, 2005, Battista sought to withdraw based on a cited conflict of interest, and Attorney Edmond Alonzo was appointed as trial counsel.

Gorham's one-day trial was conducted on November 29, 2005. The jury returned a verdict of guilty on all counts [DE 4, pp. 101-102]. On February 13, 2006, Judge Sherwood Bauer

sentenced Gorham to life imprisonment as a prison releasee reoffender ("PRR") on the two counts of burglary of a conveyance with battery, and to concurrent five-year sentences on the two assault charges.

Gorham appealed his judgment of conviction to Florida's Fourth District Court of Appeal. On December 5, 2007, the Fourth District reversed the two burglary convictions as violative of the prohibition against double jeopardy, and remanded for a *de novo* sentencing. As to Gorham's ineffective assistance claim, arising from trial counsel's alleged failure to relay the state's five-year plea offer, the appellate court affirmed without discussion, holding simply that "the record of the hearing held by the trial court on this issue supports the trial court's finding that Gorham would not have taken the offer if conveyed." *Gorham v. State,* 968 So.2d 717 (Fla. 4th DCA 2007), *rev. den.*, 983 So.2d 1154 (Fla. 2008).

On resentencing, the trial judge imposed a single "PRR" life sentence for burglary of a conveyance with an assault or battery. In Gorham's direct appeal from this judgment, the Fourth District found the PRR sentencing designation erroneous, and again reversed and remanded for *de novo* sentencing. *Gorham v. State,* 988 So.2d 152 (Fla. 4th DCA 2008). On remand, the state court imposed a life sentence for burglary of a conveyance with battery or assault (Connie Hill) without a PRR designation. No sentence was imposed on the three remaining counts.

After unsuccessfully seeking post-conviction relief under successive Fla. R. Crim. P. 3.850 motions, *Gorham v. State*, 126 So.3d 1066 (Fla. 4th DCA 2013) (table); *Gorham v. State*, 224 So.3d 234 (Fla. 4th DCA 2013) (table), Gorham filed a state habeas petition challenging the adequacy of the amended information on the burglary charge, and the sufficiency of the jury instructions on the burglary count. The state trial court dismissed his petition and the Fourth District Court of Appeal

affirmed. *Gorham v. State*, 142 So.3d 905 (Fla. 4th DCA 2014).

**B. Federal Habeas Proceedings**

After exhausting his state court remedies, Gorham filed the instant petition for habeas corpus under 28 U.S.C.§ 2254 raising the following claims:

Claim 1: Ineffective assistance of counsel for failing to convey a five-year pretrial plea offer that Petitioner would have accepted;

Claim 2: Illegality of the life sentence for enhanced first-degree felony burglary in light of the jury verdict which did not specify what crime was committed during the burglary;

Claim 3: Application of the incorrect standard of review in the state court's denial of Petitioner's post-conviction motion under Fla. R. Crim. P. 3.850;

Claim 4: Ineffective assistance of counsel for failing to develop and support a "rental defense" to the burglary count;

Claim 5: Ineffective assistance of counsel for failing to object to a state witness's recounting of Connie Hill's statements;

Claim 6: Ineffective assistance of counsel for failing to impeach Melissa Gorham and Connie Hill;

Claim 7:   Ineffective assistance of counsel for failing to object to jury instructions;

Claim 8:   Ineffective assistance of counsel for failing to advise on the lesser included offense of trespass with battery;

Claim 9: Invalidity of the Florida burglary statute, § 810.02 (1), Fla. Stat.,   as unconstitutionally vague;

<u>Claim 10</u>: Erroneous advice from trial court on the sweep of the Sixth Amendment assistance clause;

<u>Claim 11</u>: Due process violation at resentencing due to the State's introduction of prior arrest information and misleading testimony;

<u>Claim 12</u>: Ineffective assistance of counsel for failing to object to prior arrest information and misleading testimony at resentencing.

**C.  The State Court Hearing - Ineffective Assistance Claim (Five-Year Plea Offer)**

Gorham initially raised his ineffective assistance claim, as it pertains to the five-year plea offer, by way of a *pro se* "motion on newly discovered evidence" submitted in his first round of post-conviction motions.   He contended he first learned of the existence of this plea offer during his post-conviction, pre-sentencing review of the public defender's file in his case.

In conjunction with the February 13, 2006, initial sentencing hearing, the trial judge preliminarily noticed this motion for hearing, recharacterizing it as a motion for new trial.[2]   The State objected to this procedure, along with the trial judge's impromptu evidentiary hearing upon it, stating the matter was instead properly the subject of a future Rule 3.850 collateral challenge to Gorham's conviction:

---

2  In a preamble, the trial judge stated:

[W]e did set it today for one-thirty, so that would be the motion… motion on newly discovered evidence which was filed and I know and, and I'm not putting a particular date on it because it's been filed and kind of refiled… but basically the claim in that motion which I'm going to take as a ground, a motion for new trial under Rule 3.600, being the … subsection (a), subsection (3), new and material evidence which, which if introduced at trial would probably have changed the verdict or finding of the court in which the defendant could not have reasonable diligence to have uncovered or produced at trial has been discovered (sic).   Stretching that to include plea offers because based upon various cases the, if a plea offer isn't extended it could be ineffective assistance of counsel, etcetera, etcetera.   Uh, so we're set for that today and I guess my, uh, my question to you Mister Gorham would be in your motion it's your claim that you were not aware of any plea offers prior to, or that plea offer, uh, of October, I think…

[DE 25-1, pp. 511-512].

[B]efore we go into any evidentiary hearing as to this, I guess it's the motion for new trial based on newly discovered evidence, I would raise two objections. First [due to timing requirements] … the court is without jurisdiction to hear that motion. Secondly, assuming that you did have jurisdiction …it's newly discovered evidence, evidence of a material nature which the court could look at and say if the jury had heard this, there is a possibility of changing the verdict. The only evidence raised in his motion is no evidence at all -- it's argument that I wasn't conveyed a proper plea offer. It's not evidence, it's not anything the jury would have ever heard and it is, assuming you had jurisdiction to hear the motion, you would have to deny it based on that …. What he's raising is potentially a 3.850 claim that would be addressed at a later time, but certainly not before this court today.

[DE 25-1, pp. 516-517].

Although the trial judge seemingly agreed, he expressed a desire to take evidence on the actual extension of the plea offer in order to preserve the record for use by a future state postconviction court:

What I would rather determine is, if it's refuted by the record, well then the record's going to be really clear today… so that the trial court somewhere down the road, uh, if there is a 3.850 filed, can have a record to either deny or grant … the motion… [T]hat's why, I want to, I don't necessarily disagree that it doesn't really squarely fit or even roundly fit in the grounds for a new trial, a motion for trial, but the court's going to be making this determination today or it's going to be making it a year and a half from now, so I just as soon take of it today (sic) before we go much further, but I do appreciate, and I don't disagree with your position.
.

[DE 25-1, p. 517]. Compounding this procedural anomaly with the recharacterization of the motion and impromptu evidentiary hearing on the reconfigured motion, the trial judge then proceeded to himself call the defendant's originally assigned public defenders – who apparently were coincidentally in the courtroom on another matter[3] -- as the "court's witness[es]": "Uh, Ms. Celidonio, I'm going, just to move this along, I'm going to call you as my first witness. You're

---

[3] At the outset of February 13, 2006 hearing, Judge Bauer asked Public Defenders Mary Celidonio and Rebecca Hamilton, apparently then present in his courtroom on some other matter, to remain in attendance for the upcoming Gorham case. The attorneys agreed. At that juncture, the transcript reveals Attorney Celidonio asking the courtroom bailiff to hand an *ex parte* "little note" of unidentified substance to the trial judge [DE 25-1, p. 506].

going to be a court's witness…" [DE 25-1, pp. 517-518].   Judge Bauer then proceeded to direct

the examination of Celidonio and Hamilton regarding their initial representation of Gorham and

the circumstances attending the early plea-bargaining exchanges in the case [DE 25-1, p. 518 -

521].

### 1.   Public Defenders' Testimony

Celidonio testified she received an email from the State on October 18, 2004, extending a

five-year plea offer, and that she placed a copy of this communication in her file.   She went to

visit Gorham in jail the next day, but could not recall whether the offer came up for discussion.

Judge Bauer quizzed Celidonio as to whether it would have been her normal course to present an

outstanding plea offer to a client during a jailhouse interview in any event [DE 25-1, p. 519].

Celidonio explained:

> That would have been my normal practice and I would think that I would have,
> but I can also tell you that I remember that first meeting, he fired me right there,
> so the meeting didn't go well, so I don't know if we ever got to it.   We may
> have, we may not have, but, uh, I, I can honestly tell you, Judge, that I do not
> remember.

[DE 25-2, p. 520].   She further recalled that Gorham consistently indicated he wanted the case to

be tried as soon as possible, but also expressed a willingness to plea to misdemeanor battery

charges and to serve "some type of probation and rehab" [DE 25-1, pp. 520-21].   Under

questioning by Gorham's public defender (Attorney Alonzo), Celidonio acknowledged that she

received a letter from Gorham within a month of the jailhouse meeting asking her to explore the

possibility of a plea bargain involving some jail time and an extended probation term,   an   inquiry

which made no reference to the pendency of any plea offer from the prosecution [DE 25-1, p. 523].

Judge Bauer next called Attorney Rebecca Hamilton as a witness, eliciting testimony regarding a ten-year plea offer she received from the State in February 2005, a matter aired in open court with Gorham at the March 2005 pretrial hearing.   Hamilton confirmed that Gorham rejected the offer, in open court under questioning of the trial judge, on the stated reason that he first wished to review contemplated discovery depositions from the State's key witnesses to assess the offer [DE 25-1, p. 527].

**2.  Gorham's Testimony**

Gorham testified he never received notice of the five-year plea offer extended to Celidonio, and that he would have "jumped on" the offer [DE 25-1, p.515] "without a doubt" [DE 25-1, p. 530] had he known of it.   After a brief cross by the State, the trial judge himself proceeded to cross-examine Gorham, outlining Gorham's persistent history of speedy trial demands (fifteen filings), demonstrated upset with attorneys who were not moving fast enough, rejection of the ten-year plea offer, and comments made at the conclusion of his trial eschewing responsibility for anything but the batteries [DE 25-1, pp. 531-534].   Judge Bauer then concluded he had a "feeling" from "all the reading" he had done and his "commonsense" view of it that Gorham "wanted a trial and that was it," and that it would not have "made a bit of difference" if Gorham knew about the five-year plea at the outset of the case.   He then turned to Gorham and said, "So tell me why I'm wrong." [DE 25-1, p. 534].

Gorham explained that he resisted waiving speedy trial because he hated sitting in the county jail and was "begging" by way of speedy trial to end that confinement.   Had Celidonio presented him with the five-year offer, and explained the risk of upgraded charges carrying life sentencing exposure, he rhetorically queried, "How difficult do you think it would have been for

me to accept that five-year deal?" [DE 25-1, p. 535].[4]

The trial judge then questioned Gorham on comments he made at the conclusion of the trial, when Gorham apologized to his victims for his conduct, but reiterated his belief he was only guilty of two batteries. The trial judge suggested that Gorham's stance demonstrated "why [he] wouldn't have taken the [five-year] deal."[5] Gorham replied, "[W]hat I'm saying to you is … sometimes, hey, whether you're guilty or not, its not risk, worth risking the jeopardy ... It's worth taking the deal…. I would have pled to eight or nine felonies had I known that [the state attorney] wasn't going to seek habitualization and that I was only going to get five years in contrast to possibly getting life sentences for being up-charged." [DE 25-1, p. 535-536].

Following Gorham's testimony, the trial judge asked the state attorney if he wished to contribute anything further on the motion. The State reiterated its objection to the trial court's rendition of fact findings on the ineffective assistance claim in the forum in which it was called up, stating "I don't intend to litigate what I think is a future 3.850 issue today." [DE 25-1, p. 540].[6] The trial judge seemingly agreed, but again expressed concern over preserving the record with testimony on the issue, and then inexplicably simply proceeded to rule from the bench on the merits of the ineffective assistance claim as it related to the five-year plea [DE 25-1, pp. 542-543].

---

[4] In an unsolicited, one-word (unsworn) interjection at this juncture of Gorham's testimony, Attorney Celidonio commented: "Very." [DE 25-1, p. 535, line 22].

[5] The five-year offer was extended by the State in exchange for a plea on the original information which did not include the burglary of a conveyance charges carrying lifetime sentencing exposure.

[6] Despite the State's perceptive objections to the trial judge's procedural missteps at the time of hearing, and protest over the rendition of fact findings outside the Rule 3.850 context, in the instant habeas proceeding under § 2254 it has taken an entirely different tact, urging this Court to accept the trial judge's findings on prejudice as "supported by the record." It also posits that Gorham's statement of intention concerning the five-year plea offer is not independently corroborated by any objective evidence as required under state case law [DE 23, pp. 52-53].

### 3. State Court Ruling

The trial judge orally denied Gorham's post-conviction motion pertaining to the ineffective assistance claim, advising Gorham "that will be something you could take up on appeal." The trial judge explained [DE 25-1, pp. 541-43]:

> I do find, based upon the record … that the (defendant's) motion for newly discovered evidence, which I'm interpreting as a motion for new trial or at least a motion to set aside the verdict … is denied… [T]he record does not clearly indicate that the offer was extended, but regardless of whether it was extended or not… the record I think is very clear that Mister Gorham would have rejected that offer as he did the ten-year offer … as he drove fast and furious towards … a trial by demanding speedy trial from literally, from the first days in the county jail. Uh, that you want to have a trial, that your comment at the end of, uh, of the, after the verdict, that, uh, believed and you've made that comment other times, that you believe you're only guilty of the batteries (sic), perhaps left you with some confidence that that's what the result would be at a trial …. I believe the record is … abundantly clear with the number of filings that were made … stat(ing) that I want a speedy trial, I want a fast trial, I don't want any delays, I want counsel who works immediately …. I feel very confident in making the finding, based upon all the facts and circumstances that, uh, that it would have made, that, that I don't even have to ask, answer the first question on whether you received the plea offer because I don't think it would have made a bit of difference if you had received that plea offer. I think we would be in the exact same position right now. So. I'm not finding that it wasn't made because I, I'm not so certain on that.

## II. Standard of Review

### A. Section 2254 Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in a state proceeding only if the state court's denial of relief either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law,[7] as determined by the Supreme

---

[7] The phrase "clearly established Federal law," as used in Section 2254(d)(1), refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404 (2000); 28 U.S.C. § 2254(d) (2).

The "contrary to" and "unreasonable application" clauses of §2254 (d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief only if (1) the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) the state court confronted facts that are materially indistinguishable from a relevant Supreme Court precedent and arrived at an opposite result. *Williams*, 529 U.S. at 405; *Brown*, 544 U.S at 141. However, a state court's failure to cite governing Supreme Court authority does not *per se* establish that the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

Under the "unreasonable application" clause, alternatively, federal habeas relief may be granted if (1) the state court identifies the correct legal principle from Supreme Court precedent, but applies that principle to the facts of the case in an objectively unreasonable way, *Brown v. Payton*, 544 U.S. at 141; *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010), or (2) the state court unreasonably extends a legal principle from Supreme Court case law to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *Alvarado v. Hickman*, 316 F.3d 841, 852 (9th Cir. 2002). The focus here is on whether the state

court's application of federal law was objectively unreasonable, and an "unreasonable application" is different from a merely "incorrect one." *Schriro v. Landrigan*, 550 U.S. 465 (2007); *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). This standard is met where it is "so obvious that a clearly established rule applies to a given set of facts that there could be no 'fair-minded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court's decision that we are to decide.").

This is a "difficult to meet" and "highly deferential standard for evaluating state court-rulings," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), allowing federal habeas intervention only where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with Supreme Court precedent." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Put another way, as a condition for obtaining federal habeas relief, a state prisoner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

When evaluating a state prisoner's petition, "a habeas court must determine what arguments or theories supported or [if none were stated] could have supported [] the state court's decision; and then it must ask whether it is possible that fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of [the Supreme Court]." *Reese v. Sec'y, Fla. Dept. of Corrections*, 675 F.3d 1277, 1286-87 (11th Cir. 2012)

(quoting *Richter*, 562 U.S. at 103). Even where - as here - the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the same deferential AEDPA review standard applies. *Bishop v. Warden, GDCP*, 726 F.3d 1243 (11th Cir. 2013)

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson v. Warden, Georgia Diagnostic Prison*, 898 F.3d 1314, 1322 (11th Cir. 2018).

In this case, because the Florida Fourth District Court of Appeal did not explain its reasons for rejecting Gorham's ineffective assistance claim as it related to the five-year plea offer, beyond a blanket statement regarding the sufficiency of evidence before the trial court upon the issue, this court "looks through" the state appellate court's decision and presumes that it adopted the reasoning of the trial court, which represents the "last related state court decision that … provide[d] a relevant rationale."

Finally, a prisoner seeking federal habeas relief bears the burden of overcoming, by clear and convincing evidence, a state court's factual determinations: "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.§ 2254(e)(1). This presumption of correctness applies to a finding of fact, but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. ), *cert. den.*, 534 U.S.

1046 (2001). As relevant to the instant case, because both the deficiency and prejudice prong of the *Strickland* standard address mixed questions of law and fact, the state court's findings on these elements are not subject to the § 2254(e)(1) presumption of correctness. *Jefferson v. GDCP Warden*, 941 F.3d 452 (11th Cir. 2019); *Debruce v. Commission, Ala. Dept. of Corrections*, 758 F.3d 1263, 1266 (11th Cir. 2014); *Hardwick v. Crosby*, 320 F.3d 1127 (11th Cir. 2003); *Ramonez v. Berghuis,* 490 F.3d 482 (6th Cir. 2007); *Garmon v. Lockhart*, 938 F.2d 120 (8th Cir.1991), However, a "'doubly deferential' standard of review still obtains in determining the objective reasonableness of the state court's application of Supreme Court precedent under *Strickland." Burt v. Titlow,* 571 U.S. 12, 15 (2013).

**B. Ineffective Assistance of Counsel -**

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a prisoner claiming constitutionally ineffective assistance of counsel must show: (1) counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) but for counsel's errors, there is a "reasonable probability that the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Lafler v. Cooper*, 566 U.S. 156 (2012). A "reasonable probability" in this context is defined as a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The two-prong *Strickland* test applies to ineffective assistance claims arising out of the plea-bargaining process. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). This follows because trial counsel has a constitutional duty to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. This includes an obligation to both convey and offer opinion on the advisability of any plea offers. *Diaz v. United*

*States*, 930 F.2d 832, 834 (11th Cir. 1991);   *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005).

In assessing the first *Strickland* prong, deficiency of performance, in the plea context *Strickland*'s "strong presumption" that counsel has acted in a professional and competent manner is considered of limited relevance because plea advice usually does not generally implicate an attorney's strategic decision-making. *Davis,* 428 F.3d at 90.   That is, there "can be no appropriate strategic reason for failing to inform" a client of the facts and circumstances relevant to a plea decision, and counsel is always obliged to adequately inform his client on plea considerations and to provide advice regarding this "crucial decision." *Pham v. United States*, 317 F.3d 178, 182-83 (2nd Cir. 2003).

The second *Strickland* prejudice prong requires a claimant to show a "reasonable probability" that he would have pled differently had he been properly advised on the existence and desirability of the offer.   This is a lesser standard than a "preponderance of the evidence," *Williams v. Taylor*, 529 U.S. 362, 406 (2000) (noting imposition of preponderance standard in establishing prejudice would be contrary to *Strickland*); *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001) (standard is "not a stringent one"), rendering it easier to show prejudice in the plea context, where a claimant need only show a "reasonable probability" he would have pled differently but for counsel's errors – not an absolute certainty that he would have taken a different stance.   *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003).

## III.    DISCUSSION

In determining whether to adopt the Magistrate Judge's Report, as it pertains to the ineffective assistance claim set forth at Claim 1, this Court initially addresses whether the state court's denial of Gorham's ineffective assistance claim was based on application of an incorrect

legal principle, under existing Supreme Court precedent, or alternatively, whether the state court's denial of Gorham's claim reflected an objectively unreasonable application of Supreme Court precedent in light of the evidence before the state court.

If the answer to either question is yes, the Petitioner is entitled to a *de novo* review of his ineffective assistance claim in this Court, and is entitled to an evidentiary hearing for independent determination on whether (1) trial counsel's performance was constitutionally deficient by reason of a failure to convey the five-year plea offer to Gorham (and to offer counsel on its advisability) and (2) whether there is a "reasonable probability" that Gorham would have accepted the offer had he been timely advised of it and counseled on its advisability.

### A.  "Contrary to" Clause

As noted, *Strickland* requires that a defendant establish a "reasonable probability" of prejudice, meaning a "probability sufficient to undermine confidence in the outcome" -- a standard less demanding than the ordinary civil preponderance of evidence burden.   In this case, the trial judge's stated rationale for rejection of Gorham's ineffective assistance claim, as it related to the five-year plea offer, did not include a specific reference to *Strickland* and did not articulate or reference any evidentiary yardstick remotely close to the *Strickland* "reasonable probability" standard.

To the contrary, the trial judge concluded that Gorham "wanted a trial no matter what," and it would not have made "a bit of difference" to the outcome in the case if he had been apprised of the five-year plea offer: the trial judge drew this conclusion as an inference from Gorham's aggressive litigation conduct (itemized by the trial judge to include fifteen demands for speedy trial; rejection of a 10-year plea offer; and refusal to acknowledge guilt on the upgraded burglary

charges).   After reciting these perceived inconsistencies in Gorham's stance, the trial judge directed Gorham to "tell me why I'm wrong."   This directive shows the state court effectively shouldered Gorham with an improperly heavy burden of proof (essentially asking Gorham to prove he actually would have taken the plea) and one directly contrary to the Supreme Court's holding in *Strickland. See Magana vs. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001) (holding Michigan state court of appeals' formulation of prejudice standard - allowing trial court's determination on prejudice to stand if trial court determined that defendant would not have accepted the offer – placed too great of a burden of proof on defendant contrary to *Strickland* principle of "reasonable probability").

Mindful of the deference owed to the Florida Fourth District Court of Appeals' decision, this Court concludes that the state court imposed an inappropriately stringent burden on Gorham in its resolution of his ineffective assistance claim.   The trial judge did not reference the *Strickland* opinion, nor did his exposition of reasons for his disposition of the claim suggest use of a "reasonable probability" yardstick. To the contrary, by challenging Gorham to "prove me wrong," the judge effectively required Gorham to prove in fact that he would have taken the five-year deal had he been properly apprised of it.

The trial judge's error in the adoption of such a clearly erroneous evidentiary burden was likely the product, at least in part, of the procedural missteps attending the impromptu evidentiary hearing which he conducted after incorrectly labelling the petitioner's motion as one for new trial based on newly discovered evidence.   Had the matter been properly considered in the context of a post-conviction motion under Fla. R. Crim. P. 3.850 – as the State repeatedly urged the trial judge to do – both sides presumably would have been better prepared to identify the correct legal

standards and to present pertinent proofs.

Without the benefit of reflection on controlling legal precepts, the trial judge demanded proof that Gorham in fact would have accepted the five-year plea offer, and did not determine – as required by *Strickland* -- whether Gorham had established a "reasonable probability" that, but for counsel's lapse in relaying the offer, he would have accepted it. Laboring under this erroneously high standard of proof, the trial judge then made the conclusory finding that it would not have made "a bit of difference" if Gorham had known of the five-year plea, given his persistence in asserting his right to a speedy trial throughout the proceedings, his rejection of ten-year plea his insistence on his innocence of the burglary "upcharges" even after the jury returned a verdict of guilty on those charges (one of which was later vacated on appeal on double jeopardy grounds). The state court should not have required Gorham to prove his ineffective assistance claim without affording him a proper evidentiary hearing, and certainly should not have required him to prove his claim with certainty.

To the extent the trial judge demanded more, it applied an evidentiary burden contrary to Supreme Court precedent. The Florida appellate court's affirmance of this ruling without any discussion or identification of controlling federal law precepts was plainly contrary to the clearly established precedent of *Strickland.* This Court accordingly finds AEDPA's threshold requirement for habeas relief under the "contrary to" clause of § 2254(d)(1) satisfied here. *Cf. Mask v. McGinnis*, 233 F.3d 132, 140-141 n. 5 (2[d] Cir. 2000) (state appellate court's summary recitation of correct *Strickland* rule did not save lower court's inapposite determinations on prejudice under incorrect "certainty" standard (requiring defendant to show "but for the error … [defendant] would have been offered and would have accepted a more advantageous bargain")),

*cert. den.*, 534 U.S. 943 (2001); *Rose v. Lee*, 252 F.3d 676, 689 (4th Cir. 2001) (rejecting state court adjudication of ineffective assistance claim as "contrary to" *Strickland* where state court erroneously applied preponderance of evidence standard on prejudice prong); *Leatherman v. Palmer*, 583 F. Supp. 2d 849 (W.D. Mich. 2008), *aff'd,* 387 Fed. Appx. 533 (6th Cir. 2010).

### B. "Unreasonable Application" Clause

Under §2254(d)(1)'s "unreasonable application" clause, this Court alternatively addresses whether the state court applied correct legal principles in an objectively unreasonable way, an inquiry requiring analysis of the state court's methodology as well as its result. *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *Lockyer v. Andrade*, 538 U.S. 63 (2003). To assess the "objective unreasonableness" of the state court's finding on prejudice, the Court inquires as to whether fair-minded jurists could disagree on the reasonableness of the trial judge's application of Supreme Court precedent in reaching its conclusion.

In the plea bargain context, the *Strickland* prejudice prong has been interpreted in some circuits to require some "objective evidence," beyond the defendant's own statement of intent, to prove a "reasonable probability" of a different outcome. *See e.g. Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). *Compare Diaz v. United States*, 930 F.2d 832 (11th Cir. 1991) (given defendant's awareness of plea offer, after-the-fact testimony concerning a desire to plead, without more, held insufficient to establish a reasonable probability that he would have accepted the plea but for counsel's alleged ineffective advice on desirability of plea). However, a significant sentencing disparity, in combination with a defendant's statement of intention, is generally recognized as sufficient to support a prejudice finding in a lapsed plea offer scenario. *See Pham*, 317 F.3d at 182 (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)).

In this case, the disparity between the five-year plea offer and the life sentence imposed on Gorham is extraordinarily significant. Despite this disparity, the trial judge found no prejudice to Gorham flowing from counsel's (assumed) failure to convey the offer, instead drawing his own inference on Gorham's willingness to plead guilty based on Gorham's history of aggressive litigation tactics - to wit, his persistent demands to enforce his constitutional right to a speedy trial; his rejection of a ten-year plea offer (conditioned on his assumption of habitual offender status) under threat of upcharges including a potential life felony, and his refusal, after the jury rendered its verdict, to acknowledge responsibility on those upgraded charges. In drawing this inference, the trial court disregarded Gorham's affirmative post-conviction statement of intent on his willingness to plea, as well as the undisputed evidence of Gorham's pretrial, multiple appeals for counsel to explore a plea bargain with the State before arraignment.

While a significant sentencing disparity is deemed sufficient, standing alone, to support a claim of prejudice in a Strickland inquiry, *see e.g. Carrion v. Smith*, 644 F. Supp. 2d 452, 471 (S.D.N.Y. 2009), *aff'd*, 365 F. Appx. at 279 (2nd Cir. 2010), it does not mandate a finding of prejudice under *Strickland* in all cases. Rather, it is viewed as one factor for consideration in the overall assessment. *See e.g. Muyet v. United States*, 2009 WL 2568430 at *5 (S.D.N.Y. 2009). In this case, however, there was no competing evidence before the trial court from which a contrary conclusion on prejudice might reasonably have been drawn. More specifically, the litigation conduct chronicled by the trial judge did not support a reasonable inference that Gorham was hell-bent on going to trial "no matter what" and would have rejected the five-year plea offer, even if known.  And no fair-minded jurist could have drawn such a conclusion based on Gorman's conduct outlined by the trial judge in support of his ruling.

First, regarding Gorham's history of speedy trial demands: it is unreasonable to infer that the assertion of one's constitutional right to a speedy trial is inconsistent with an amenability to plea. Many factors might induce a defendant to demand a speedy trial having nothing to do with acknowledgment of guilt and openness to a plea of guilty. A defendant held in pretrial detention, for example, obviously has a stronger incentive to seek speedy trial, and the assertion of this right in any event is a recognized bargaining tool often employed to elicit the state's best plea offer at the outset of a case.

Second, Gorham's subsequent rejection of a ten-year plea offer does not reasonably support an inference that he would have resisted an offer of the state to recommend a prison term of half that time (without attaching habitual offender status). Moreover, without a better-developed evidentiary predicate on the circumstances attending relay of the ten-year offer to Gorham (including the quality of professional advice on its advisability), it is impossible to draw any inference from it regarding Gorham's receptivity to a plea offer of any length.

Finally, one cannot logically conclude that because of Gorham's post-conviction failure to acknowledge guilt on the burglary charges which carried the life sentence, he would not have been amenable to pleading guilty to the battery and aggravated assault charges on which the original information (and five-year plea offer) rested. That Gorman may have harbored some misguided belief about his criminal responsibility on the enhanced charges, notwithstanding the jury's guilty verdict, does not support a reasonable inference that he would have refused a reasonable plea offer on the original information.

This Court thus concludes that the state trial judge unreasonably applied clearly established federal law when it drew an inference of Gorham's intransigence to plea from these

factors and rejected his claim of ineffective assistance of counsel based on insufficient evidence that Gorham's knowledge of the five-year plea offer would have made any difference in the outcome of the case. It cannot fairly be said that Gorham's exercise of his constitutional right to a speedy trial demonstrated an intractable resistance to plead guilty, or that his dispute over culpability on the burglary life-felony charge negated his ability or willingness to plead guilty on the lesser assault and battery charges included in the original information. Nor on this record can any inference reasonably be drawn on Gorman's amenability to the five-year plea offer from his subsequent rejection of an offer to serve twice that amount of time.

The trial judge's reliance on these factors constituted an unreasonable application of federal law, notwithstanding the 'doubly deferential" standard owed under AEDPA. Gorham needed only to demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with "reasonable probability" that he would have accepted the plea offer, a probability "sufficient to undermine the result." *Strickland*, 466 U.S. at 694. To the extent the state court required more, it applied the *Strickland* test unreasonably. In other words, it was objectively unreasonable for the trial judge to conclude on the record before it that no reasonable factfinder could believe that Gorham had been prejudiced.

Because no fair-minded jurist could debate the unreasonableness of the state court's application of the *Strickland's* prejudice prong on the record before it, this Court finds that AEDPA's "unreasonable application" clause is also satisfied here, such that *de novo* review of Petitioner's ineffective assistance claim is warranted on this independent basis. *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003) (holding state court rejection of defendant's ineffective assistance claim in plea context to constitute unreasonable determination of facts under *Strickland); Banks v.*

*Vannoy*, 708 Fed. Appx. 795 (5th Cir. 2017) (state court denial of relief on ineffective assistance claim, drawing from defendant's consistent declarations of innocence, rejected as unreasonable application of *Strickland*); *Carrion v. Smith*, 644 F. Supp. 2d 452 (S.D.N.Y. 2009) (state court decision rejecting ineffective assistance claim constituted unreasonable application of clearly established federal law, given defendant's statement of intent and significant sentencing disparity), *aff'd*, 365 Fed. Appx. 278 (2nd Cir. 2010).

## IV.    CONCLUSION

For reasons stated, the Court concludes that AEDPA is satisfied under either the "contrary to" or "unreasonable application" clauses of § 2254(d)(1). Petitioner's ineffective assistance claim, as set forth in Claim 1 of his Petition, properly proceeds in this Court accordingly with *de novo* review of this claim. *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842 (2007) (once AEDPA is satisfied, a federal court must resolve the petitioner's claims without the deference AEDA otherwise requires); *McGahee v. Ala. Dept. of Corrections*, 560 F.3d 1252 (11th Cir. 2009) (once habeas court determines that a state court decision is an unreasonable application of federal law under the AEDPA, it is unconstrained by deference under the AEDPA and must undertake a *de novo* review of the record).   The Court further finds that an evidentiary hearing on Claim 1 is necessary to determine the following issues:

(1) whether Celidonio's assistance of Gorham with regard to the five-year plea offer fell below an objective standard of reasonableness under prevailing professional norms;

(2) if yes, whether there is a reasonable probability that Gorham would have taken the five-year plea offer but for Celidonio's constitutionally ineffective assistance.

*See generally Nichols v. McNeil*, 331 Fed. Appx. 705 (11th Cir. 2009) (unpub) (evidentiary

hearing warranted on merits of defendant's claim that trial counsel was ineffective for not informing him of prior plea offer); *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003) (gap between sentencing exposure after conviction and unrelayed plea offer held sufficient to merit evidentiary hearing to determine whether there was reasonable probability of acceptance, notwithstanding defendant's repeated declarations of innocence); *United States v. Blaylock*, 20 F.3d 1458 (9th Cir. 1994) (fact that defendant, unaware of government's offer, chooses to go to trial does not warrant inference that there is no reasonable probability that he would have accepted government's offer had it been timely conveyed); *Dozier v. Phillips*, 2009 WL 3030299 (S.D. N.Y. 2009) (state court application of inappropriate evidentiary burden on prejudice prong of *Strickland* held unreasonable application of federal law under AEDPA, with evidentiary hearing warranted to determine "reasonable probability" question).

It is accordingly **ORDERED** and **ADJUDGED**:

1. Magistrate Judge Lisette Reid's Report and Recommendation [DE 42] is **OVERRULED** as to Claim One.

2. The Court shall conduct an evidentiary hearing, to be scheduled by separate order of the Court, on the issues presented on Claim 1.

3. The Magistrate Judge's Report is **APPROVED AND ADOPTED** as to Claims Two through Twelve. The petition is **DENIED** as to these claims.

4. The Federal Public Defender is appointed to represent Petitioner Gorham in future proceedings in this matter.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 18th day of February 2020.

KENNETH A. MARRA
United States District Judge

Copies to:

all counsel
Federal Public Defender Office
Robert Gorham, *pro se*